835 A.2d 187

**Earl Warren SEIP**

v.

**STATE of Maryland.**

**No. 1543, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Nov. 4, 2003.

Peter Ayers Wimbrow, III of Ocean City, for appellant.

Celia Anderson Davis (J. Joseph Curran, Jr. on the brief), Baltimore, for appellee.

Argued before JAMES R. EYLER, ADKINS, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

ADKINS, Judge.

We are asked to decide whether the suppression court erred in holding that a police officer in fresh pursuit of a motorist who violated the speed limit within the officer's jurisdiction may stop that motorist outside the officer's jurisdiction. We affirm the suppression court's holding because we find no error in its findings that the doctrine of fresh pursuit is not abrogated by Md.Code (1957, 2001 Repl.Vol.), section 2–102(b)(3) of the Criminal Procedure Article ("CP").

## FACTS AND LEGAL PROCEEDINGS

At approximately 1:30 AM on February 27, 2001, Earl Warren Seip, III, appellant, was observed exceeding the 55 mile per hour posted speed limit on Route 90 by PFC Ray Austin, Ocean City Police Department. Seip was within the Ocean City corporate limits when Austin first detected he was speeding. Austin initiated a traffic stop by activating his emergency equipment as Seip drove westbound over the Big Assawoman Bay Bridge. He followed Seip across the bridge, waiting, due to safety concerns, to reach the far side before pulling him over. Austin's stop of Seip, consequently, occurred outside the Ocean City limits in Worcester County. Seip was arrested for driving while impaired, in violation of Md.Code (1977, 2002 Repl.Vol.), section 21–902(b) of the Transportation Article.

Seip moved to suppress the evidence against him, alleging the stop violated Md.Code (1957, 1996 Repl.Vol.), Article 27, section 594B(*l*)(2)(ii)(now Md.Code (2001) CP section 2–102(b)(3)), because it was made outside Austin's jurisdiction. In a cogent six-page opinion, the court rejected Seip's argument and denied his motion to suppress.

Seip entered a not guilty plea on agreed statement of facts. The court found Seip guilty of driving under the influence of alcohol. He was sentenced to one year in the Worcester County Detention Center, with all but 30 days suspended, and 36 months of supervised probation. A fine of $500.00 was imposed, and he was assessed court costs of $166.00. Seip timely filed an appeal to this Court.

## DISCUSSION

### I.

### Standard Of Review

The Court of Appeals recently explained the standard of review used by appellate courts in reviewing motions to suppress evidence in *Dashiell v. State,* 374 Md. 85, 821 A.2d 372 (2003).

"Our review of a Circuit Court's denial of a motion to suppress evidence under the Fourth Amendment is limited, ordinarily, to information contained in the record of the suppression hearing and not the record of the trial. When there is a denial of a motion to suppress, we are further limited to considering facts in the light most favorable to the State as the prevailing party on the motion. In considering the evidence presented at the suppression hearing, we extend great deference to the fact-finding of the suppression hearing judge with respect to the weighing and determining [of] first-level facts. When conflicting evidence is presented, we accept the facts as found by the hearing judge unless it is shown that his findings are clearly erroneous. Even so, as to the ultimate conclusion of whether an action taken was proper, we must make our own independent constitutional

appraisal by reviewing the law and applying it to the facts of the case."

*Id.* at 93–94, 821 A.2d 372 (quoting *State v. Collins,* 367 Md. 700, 706–07, 790 A.2d 660 (2002)) (citations omitted).

## II.

### Fresh Pursuit

The common law doctrine of fresh pursuit allows an officer to pursue and arrest a person outside of the officer's jurisdiction, without a warrant, for misdemeanors committed in the officer's presence within a reasonable time after commission of the crime. *See Gattus v. State,* 204 Md. 589, 600–01, 105 A.2d 661 (1954); *Torres v. State,* 147 Md.App. 83, 98, 807 A.2d 780 (2002). The doctrine has been codified in CP section 2–301. CP § 2–301(b) provides, in pertinent part

(b) *Elements of fresh pursuit.—*

(1) Fresh pursuit is pursuit that is continuous and without unreasonable delay.

(2) Fresh pursuit need not be instant pursuit.

(3) In determining whether the pursuit meets the elements of fresh pursuit, a court shall apply the requirements of the common law definition of fresh pursuit that relates to these elements.

(c) *Conditions for fresh pursuit.—*A law enforcement officer may engage in fresh pursuit of a person who: ...

(2) has committed a misdemeanor in the presence of the law enforcement officer in the jurisdiction in which the law enforcement officer has the power of arrest.

(d) *Authority of officer engaged in fresh pursuit.—*A law enforcement officer who is engaged in fresh pursuit of a person may:

(1) arrest the person anywhere in the State and hold the person in custody; and

(2) return the person to the jurisdiction in which a court has proper venue for the crime alleged to have been committed by the person.

We apply the above factors to determine if Austin's actions constitute fresh pursuit. The trial court found that Seip was observed committing a misdemeanor (exceeding the posted speed limit) by Austin while in Austin's jurisdiction (Ocean City). Austin immediately pursued Seip, initiated the stop, and, after determining that Seip was under the influence of alcohol, arrested him.

In *Swain v. State*, 50 Md.App. 29, 40–41, 435 A.2d 805 (1981), we identified several factors courts should assess in evaluating whether police action meets the fresh pursuit test:

"The nature of the crime, the activities and location of the pursuer after receiving a report of the commission of the crime, whether or not the pursued had been identified or would escape, the extent and nature of the evidence connecting the pursued with the crime, and the potential for the pursued to cause immediate and additional injury or damage to others. . . ."

*Id.* (quoting *Six Feathers v. Wyoming*, 611 P.2d 857, 861 (1980)).

Austin witnessed Seip driving in excess of the speed limit. Speeding can have potentially deadly consequences to the offender and other motorists or pedestrians. "The greater the danger to the public safety, the more important it is to apprehend the suspect quickly." *Id.* at 41, 435 A.2d 805. Austin's pursuit of Seip falls within the boundaries of the fresh pursuit doctrine because immediate pursuit was justified by the public danger posed by Seip's actions, Austin's personal observation of the criminal activity directly connected Seip to the crime, and the high probability that Seip would escape. The motion court held that Austin was engaged in fresh pursuit when he stopped Seip. We agree.

### III.

### CP Section 2–102(b)

Seip heavily relies on *Boston v. Baltimore County Police Dep't*, 357 Md. 393, 744 A.2d 1062 (2000), contending that it

stands for the proposition that Article 27, section 594B($l$)(2)(ii) bars police officers from initiating stops outside their jurisdiction for violation of traffic laws that occurred in their jurisdiction. As we explain below, *Boston* does not apply to this case.

*Boston* concerned the pursuit and stop of a reckless driver by a Baltimore County Police Officer (Boston) who was in transit through Baltimore City when he observed a car run a red light and almost hit his police cruiser. *See id.* at 398–99, 744 A.2d 1062. Boston gave chase through Baltimore City. *See id.* at 399–400, 744 A.2d 1062. The chase ended when the pursued car collided with a taxicab, killing the passenger. *See id.* at 400, 744 A.2d 1062. Boston was subsequently disciplined and fined five days leave. *See id.* at 395, 744 A.2d 1062.

"Under Maryland common law, a local police officer had no authority to act officially, at least for the purpose of making an arrest, outside the boundaries of the political subdivision by which the officer was employed." *Id.* The Boston Court recognized this limitation, as well as the "fresh pursuit" exception:

> "Generally, a peace officer's authority to make an arrest is limited, **in the absence of statutory authority expanding it,** to the confines of the geographical unit of which he is an officer. **At common law, a limited exception to this rule developed which permits an officer who is in 'fresh pursuit' of a suspected felon** to make a legally binding arrest in a territorial jurisdiction other than the one in which he has been appointed to act...."

*Id.* (quoting *Stevenson v. State*, 287 Md. 504, 509–10, 413 A.2d 1340 (1980)) (citations omitted)(emphasis added).

The Court in Boston was asked to construe and apply Article 27, section 594B($l$), later re-codified as CP section 2–102, a statute that the Court characterized as "expand[ing] the extraterritorial authority of local police officers[.]" *Id.* at 396, 744 A.2d 1062. This section allowed police to exercise extrajurisdictional powers under certain circumstances:

> (2)(i) Except as provided in subparagraph (ii) of this paragraph and subject to the limitations provided in para-

graph (3) of this subsection, and in addition to the powers granted in § 298 of this article [the authority to enforce the drug laws], a police officer of this State may make arrests, conduct investigations and otherwise enforce the laws of this State throughout the State without limitations as to jurisdiction.

**(ii) Under this subsection a police officer may not enforce the provisions of the Maryland Vehicle Law beyond the officer's sworn jurisdiction.**

(3) A police officer may exercise the powers granted in this subsection if:

(i) 1. The police officer is participating in a joint investigation with officials from any other State, federal, or local law enforcement agency at least one of which shall have local jurisdiction;

2. The police officer is rendering assistance to a police officer;

3. The police officer is acting at the request of a local police officer or a State Police officer; or

4. An emergency exists; and

(ii) The police officer is acting in accordance with regulations adopted by the police officer's employing agency to implement this subsection.

Article 27 § 594B($l$).

The Baltimore County Police Department argued that he acted outside his authority established pursuant to section 594B(1) and common law, because Boston made an arrest outside his jurisdiction for a traffic offense that occurred outside his jurisdiction. Boston argued that section 594B($l$)(2)(ii) does not bar police officers from effecting "an extrajurisdictional stop of a suspected impaired driver until local police arrive to enforce the law." *Id.* at 402, 744 A.2d 1062.

Recounting the legislative history of section 594B($l$)(2)(ii), the Court found that a major concern of the legislature was that police officer safety would be compromised if officers effectuated traffic stops outside their jurisdiction because that

location may be beyond the officer's radio communication capability.[1] *See id.* at 398, 744 A.2d 1062. The Court held that the statute clearly bars a police officer from initiating a stop to enforce motor vehicle law violations occurring beyond the officer's sworn jurisdiction. *See id.* at 406, 744 A.2d 1062.

Unlike Boston, Austin's authority derived from CP section 2–301, because he was acting in "fresh pursuit."[2] Section 594B(1), as well as the re-codified section 2–102, clearly provide that this section does not impair a right of arrest otherwise existing under the Code. *See* Art. 27 § 594B(j); § 2–102(e)(1). Austin witnessed Seip's violations while still inside the Ocean City corporate limits, and was pursuing Seip as he drove over the city line into Worcester County jurisdiction.

Seip argues that the *Boston* Court left no "wiggle room" for exceptions to the bar on extra-jurisdictional enforcement of Maryland vehicle law. He relies on the following language:

> The prohibition against enforcing the motor vehicle laws is free-standing and subject to no exceptions. Under no circumstance may an officer exercise **the authority granted in § 594B[l]** to enforce the motor vehicle laws outside of his or her home jurisdiction.

*Boston*, 357 Md. at 404, 744 A.2d 1062 (emphasis added). We do not agree. As the bolded language makes clear, the restrictions the *Boston* Court placed on the law enforcement powers of police officers under section 594B(*l*) are limited to the enforcement authority provided under that statute. Austin had the power to enforce the Maryland vehicle laws outside

---

**1.** The exception prohibiting local police officers from enforcing the Maryland Vehicle Law, *see* Article 27 § 594B(*l*)(2)(ii), *re-codified at* CP § 2–102(b)(2), was created by the Legislature in response to concerns for police officer safety raised by the Maryland Chiefs of Police Association. *See Boston v. Baltimore County Police Dep't.*, 357 Md. 393, 397–98, 744 A.2d 1062 (2000). The exception remains despite a subsequent attempt to enact legislation to rescind it. *See id.* at 398, 744 A.2d 1062.

**2.** The common law doctrine of fresh pursuit of felons has a misdemeanor counterpart. *See Gattus v. State*, 204 Md. 589, 600–01 (1954). That misdemeanor fresh pursuit doctrine has been codified at CP section 2–301.

his jurisdiction under a power provided him by another statute, namely, the fresh pursuit statute, CP section 2–301.

Generally, all parts, provisions, or sections of a statute should be considered together so that all parts are consistent. *See Blitz v. Beth Isaac Adas Israel Congregation,* 352 Md. 31, 38, 720 A.2d 912 (1998). The Court's language in *Boston* would create an inconsistency between sections 594(*l* )(2)(ii) and 2–301 unless it were read to exclude situations involving fresh pursuit. Had the Court intended to abrogate the doctrine of fresh pursuit, we believe it would have done so expressly.

There are policy reasons supporting this conclusion as well. To rule otherwise would mean that any person violating the traffic laws in Ocean City need only reach the Route 90 bridge to avoid citation or arrest. The potential for mischief there, or in anyplace near a jurisdictional boundary, is considerable.

We hold that CP section 2–301 is not abrogated by CP section 2–102(b)(2), and therefore, that the motion court did not err when it denied Seip's motion to suppress the evidence gained by Austin's stop.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**